# Rahn Township *v.* Tamaqua & Lansford Street Railway, Appellant.

[Marked to be reported.]

*Street railways—Municipal consent—Consent of private owners.*

Where a street railway is chartered to construct a railway through several municipalities, it has no right to begin the construction of its line within the limits of one of the municipalities until the consent of all the municipalities has been obtained.

It seems that a street railway company has no authority to construct its railway partly upon the highways, and partly upon the lands of private persons who have given their consent.

Street railways are railways on and along the streets of a city or town. They must conform to the grade of the streets they occupy. They may diverge for a short distance where the conformation of the surface or the position of streams makes it necessary in order to avoid discomfort or danger to the traveling public, but that a street railway may, like a steam railway, locate its route not for the accommodation of local travel along the highways, but to reduce time and distance for passengers traveling from city to city or town to town across the county, is a proposition not to be entertained. It involves a perversion of the character and objects of street railways. Per WILLIAMS, J.

Argued Feb. 20, 1895. Appeal, No. 183, Jan. T., 1895, by defendant, from decree of C. P. Schuylkill Co., Nov. T., 1894, No. 2, granting an injunction on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain the construction of a street railway.

The facts appear by the opinion of WEIDMAN, J., which was as follows :

" The bill alleges that through fraud, misrepresentation and promises, the supervisor of Rahn township granted to the defendants his consent to their locating, maintaining and constructing an electric railway over one of the public roads in that township, which consent or agreement he now asks may be revoked, and defendants enjoined from constructing or operating its road ; and directed to remove all obstructions and place it in the same condition as it was in before they began the construction thereon of its street railway.

" The grounds alleged for this action, are as follows :

" 1. The frauds, threats, etc., by which the right was procured from the supervisor.

" 2. That the agreement thus obtained in no manner provides for the protection of the highway, during or after the construction of the proposed railway, nor for complainants' protection against suits for damages for the negligence of defendants in erecting or maintaining such railway.

" 3. The defendants have no right of way and their president has so testified.

" 4. That defendants have no right of way through any municipality.

" 5. That their railway occupies 925 feet of the public road east of Tamaqua, and then runs upon private grounds, then continues on private grounds except for crossings, until it reaches the village of Seek, where it again follows the road about 600 feet; then again upon private grounds, and afterwards traverses the public roads where it has a cut varying from 3 inches to 3 feet for a distance of 300 feet, where it again enters private property until in the village of Coaldale it traverses the public road for a distance of about 540 feet.

" 6. That they have placed upon said public road ' from and off the proposed line of its road, short pieces of railroad track, which are not intended for use in the construction or maintenance of the proposed street railway.' ' The first of said independent crossings on said public road east of the borough of Tamaqua, is about 20 feet long.' The second is about 89 feet long and 400 feet removed from the proposed road and elevated

40 feet above proposed line of road; the third is about 235 feet long and 20 feet removed from proposed road, which are unauthorized and make said road inconvenient and unsafe for travel.

" 7. That the complainant believes that the defendants do not intend to construct or operate a street railway on or over the public highway, and that they have procured the consent and obstructed the road to prevent the construction and operation of any other railway over and upon said public road.

" In an opinion filed in No. 1, November Term, 1894, Equity, The Tamaqua & Lansford Street Railway Company, (these defendants,) v. The Inter-County Street Railway Company, (see post, p. 91,) after examining the testimony on this subject, which is the same in both cases, it was decided in this court that the allegation that the consent of the defendants to the use of this highway was procured by fraud, promises, etc., was not established, and we there held its contract valid.    In this connection the present bill avers that the supervisor cannot read; that the contract was not read to him; he did not understand its force and effect.    He testifies, however, that he refused to sign it until he secured (which is denied) the assurance of Messrs. Zehner and McLaughlin that they would make the same kind of agreement with him as he had obtained from the Inter-County Co.    It would seem that he knew at least that it conferred a right of way.    The full discussion of the facts in the opinion filed in the above stated case, makes it unnecessary to enter into further discussion of the testimony relating to this.

" The second reason is that the contract does not provide properly for the protection of the township for, as I infer, the repair of the highway during and after the construction of the railway, nor against suits for damages caused by the negligence of defendants.    Admitting that this would have been a proper precaution, it does not appear how the want of it shall annul the contract which has been accepted and entered upon by the defendants.

" The third and fourth reasons raise the question whether having a charter to construct a road from Tamaqua to Lansford through Rahn township, they will be permitted to build through this township before obtaining the consent of either the local

authorities of Tamaqua or Lansford.   The president of defendant company testified that they had no right of way (or consent) from any 'municipality.'   He returned to the stand and said that he meant and understood the word to mean 'borough.' As this was in a suit in which his company was seeking to uphold the agreement for a right of way obtained from Rahn township, his explanation is sufficient.   But the fact remains that defendants have admitted that they have not obtained the consent of the local authorities of Tamaqua or Lansford boroughs. Their charter authorizes them to build a railway 'along and over the following route : Beginning at the western extremity of West Broad street in the borough of Tamaqua, etc., thence along and over said street, running in an easterly direction to the point of intersection with the public road leading through Rahn township, etc., thence over and upon said highway, passing through the villages of Seek, or Gearytown, No. 10, and Coaldale, in said Rahn township, to where the road joins Ridge street in the borough of Lansford, Carbon county, Pennsylvania, thence along said Ridge street, to its junction with Spring Garden street, in said borough of Lansford, being in all a continuous line of about 5 miles in length.'   Under this act no charter can be obtained unless the applicants shall state (sec. 1) 'the circuit of the route ;' by sec. 2 they are required to pay cash for each mile of the proposed road and to swear that "it is intended in good faith to construct, maintain and operate the road mentioned in the articles of association,' and sec. 15 says that 'no street passenger railway shall be constructed by any company incorporated under this act within the limits of any city, borough or township, without the consent of the local authorities thereof, nor shall any street passenger railway be incorporated hereunder, which shall not have a continuous route from the beginning to the end, forming a complete circuit with its own track, excepting the 500 feet to be used under section 14 hereof.'"

" The agreement of the township authorities that defendants hold as a basis of their right to construct their railway on the township road recites that they obtained their charter under this act to construct their railway along Broad street, in Tamaqua, through Rahn township, on the public road leading from Tamaqua to Lansford, and thence along Ridge street in the last

named borough, to its intersection with Spring Garden street. When defendants came into court and confessed that they have not obtained any right from these two terminal boroughs to construct or operate their railway within their limits, it would seem as if the default was of the very essence of the contract, both with the state and with the local authorities. That it is as to the state was decided in Commonwealth v. The Erie N. E. R. Co., 27 Pa. 339, and under the act of 1889, the terms of the act indicate that it was to be plainly understood that the chartered company should have 'a continuous route from the beginning to the end and forming a complete circuit,' etc. No reason suggests itself why the same rule should not govern the contract with the complainant. The charter in the one case, and the agreement with the township in the other, state the termini and route, and failure as to them would be of precisely the same importance in both cases. When a company proposes to connect a township with two boroughs, precisely what it proposes it should be held to do, and not as little of it as it chooses. It would seem to be at least implied that they would build the whole road which their charter required, and which this agreement defined. That they cannot do this at this time is a sufficient reason for restraining them from taking possession of this road under this agreement.

" It does not appear to be denied that the defendants have located their railway only in part upon the street or highway and the balance over the lands of private persons, (so far as the record shows,) who have given their consent. How far this is lawful under their charter it is not necessary here to decide. It is observable that the strict term of the act authorizes the building of street railways only on streets or highways, and that the act provides no machinery for acquiring right of way over private lands but only over streets or highways, turnpikes, and portions of the tracks of other companies.

" And now Nov. 26, 1894, it is adjudged and decreed that the said The Tamaqua & Lansford Street Railway Company, its officers, agents, contractors and employees, be restrained by injunction to issue forthwith, from constructing, maintaining, or operating a street railway on or over the public road in Rahn township, leading from the borough of Tamaqua to the borough of Lansford, and from entering upon or further interfering with said public road for that purpose."

*Error assigned* was in granting perpetual injunction.

*George M. Roads* and *John W. Ryon, Fergus G. Farquhar* with them, for appellant, cited: Com. v. Erie & N. E. Ry., 27 Pa. 339; Phila. & Reading R. R. v. Kensington & Tacony R. R., 33 W. N. C. 182; Junction P. Ry. v. Williamsport P. Ry., 154 Pa. 116; Gettysburg Battlefield Electric Ry. Case, 13 Pa. C. C. 337.

*J. O. Ulrich* and *James Ryon, L. W. Barringer* with them, for appellee, cited: Booth on Street Railways, sec. 40; act of June 13, 1883, P. L. 123; Com. v. Lykens Water Co., 110 Pa. 391; Lumber Co. v. Com., 100 Pa. 438; Larimer St. Co. v. Larimer St. Ry. Co., 137 Pa. 438; Phila. & Reading R. R. v. K. & T. R. R., 33 W. N. 182; Central Tel. Co. v. Wilkes-Barre R. R., 1 Dist. Rep. 630; Com. v. Erie & N. E. Ry. Co., 27 Pa. 339; People v. Albany R. R., 24 N. Y. 261; Martin v. 2d & 3d Sts. Ry., 3 Phila. 316; Booth on Street Railway Law, secs. 56 and 62; Junction Pass. Ry. v. Williamsport Pass. Ry., 154 Pa. 116; Phila. v. Citizens' Pass. Ry. Co., 151 Pa. 128.

OPINION BY MR. JUSTICE WILLIAMS, March 25, 1895:

The questions raised by this appeal have just been decided. The invalidity of the alleged consent signed by Morris Coll, supervisor, was decided in a case in which the present defendant was plaintiff and the Inter-County Street Railway Company, defendant.[1]

The necessity resting upon the company to put itself in position to build its railway upon the circuit described in its application and charter before it can insist on occupying the highways of any one of the cities, boroughs or townships through which its circuit passes was distinctly held in Penna. Schuylkill Valley Railway Company v. Montgomery County Street Railway.[2] The importance of that holding is made perfectly apparent by the facts of this case. The defendant had not obtained the consent of the borough in which its road began, nor of that in which it ended, nor of all the districts intermediate. The construction of its circuit was absolutely impossible while this state

---

[1] See post, p. 91.
[2] See ante, p. 62.

of things lasted; and it had no right as against a township or borough that had given a valid consent to the building of the railway described in the charter, to enter upon its highways until it was in a position to do that which its charter required. This was the law prior to the act of 1889 under which the defendant was incorporated: Commonwealth v. Railroad Co., 27 Pa. 339. If that was doubtful it was made the law as to all street railways by the provisions of that act. The learned judge suggests a question of grave importance that does not seem to be raised by the assignments. He says "It does not appear to be denied that the defendants have located their railway only in part upon the street or highway, and the balance over the lands of private persons who have given their consent. How far this is lawful under their charter it is not necessary here to decide." This mode of location shows how determined is the attempt to use our street railway legislation for a purpose never contemplated by the lawmakers. Street railways are railways on and along the streets of a city or town. They must conform to the grades of the streets they occupy. They may diverge for a short distance where the conformation of the surface or the position of streams make it necessary in order to avoid discomfort or danger to the traveling public, but that a street railway may, like a steam railway, locate its route not for the accommodation of local travel along the highways, but to reduce time and distance for passengers traveling from city to city or town to town across the country, is a proposition not to be entertained. It involves a perversion of the character and object of street railways. This is obiter dictum, but the subject is so intimately related to the questions under discussion in these cases, and is of such importance both to the railroads and the people of the state, that the writer feels justified in calling the attention of the other departments of the government to it in this manner. Applications for charters should be, as we have no doubt they are, carefully examined; but attention has not heretofore been called to this subject, and its importance has therefore not been recognized.

If it is desirable to introduce a new kind of railroad transportation for long distances, it should be provided for by suitable legislation, so that all parties to be affected may be able to understand their rights and adjust themselves to the situation in

which such legislation may place them.    Whether such a new system is needed, and if needed, under what sort of regulations it shall be introduced, are legislative questions.    The exposition of such laws as we have relating to the construction, maintenance and operation of street railways, is all that concerns the courts.

The decree is affirmed.    The appellants to pay the costs of this appeal.