The Pennsylvania Railroad Company, Appellant, *v.* The Greensburg, Jeannette & Pittsburg Street Railway Company.

The Pennsylvania Railroad Company, Appellant, *v.* The Greensburg & Hempfield Electric Street Railway Company and Greensburg, Jeannette & Pittsburg Street Railway Company.

*Contract—Railroads—Boroughs—Bridges.*

Where a railroad company agrees with a borough to build an overhead bridge as a part of a public highway, the title of the bridge vests in the borough, although in the contract it was alternative to the borough that it should in consideration of the erection of the bridge cause a certain grade crossing to be vacated, or, failing to do so, should pay the railroad the cost of the bridge.

*Streets—Dedication—Evidence.*

On a bill in equity by a railroad company to restrain a street railway company from laying its tracks on a street where the railroad company had laid its tracks, the plaintiff claimed that the street was not a public highway. The evidence showed that the street had been notoriously and publicly used by the public for five or six years; that the owners in fee of the land had graded the street and agreed to dedicate it to the public; that the railroad company had recognized it as a street, and that the borough had spent large sums of money upon it. *Held*, that the evidence was sufficient to sustain a finding of the court that the street was a public highway.

*Street railways—Location—Act of May 14, 1889.*

It seems that street railway companies incorporated under the act of May 14, 1889, P. L. 211, may build their roads elsewhere than upon streets properly and strictly so called.

*Street railways—Additional servitude.*

The laying of railway tracks on a suburban road is an additional servitude which cannot be imposed upon the owner of the fee against his will by the mere consent of the township authorities.

*Street railways—Consent of all local municipalities.*

The franchise of a street railway passing through several localities is an entirety, and the necessary local or municipal consent for the whole route must be obtained before it has a right to build any part.

*Street railways—Railroad companies—Equity—Injunction—Special injuries.*

Where the charter of a street railway company incorporated under the

act of May 14, 1889, covers the route upon which the railway is built, and the company has secured the consent of the local authorities, of all the owners of property along the roads occupied, and of those through whose property its line passes, a railroad company cannot question the prima facie right of the street railway company to operate its road, unless it shows some interest in, or damage to, itself different from that of the general public.

The eighteenth section of the act of May 14, 1889, gives in express terms the right to street railway companies to cross railroads at grade, and a fortiori the right to cross overhead.

*Railroad companies—Abutting landowner.*

In respect to a mere crossing, a railroad company is not an abutting landowner to a passenger railway.

*Street railways—Location—Divergence from route—Act of May* 14, 1889.

Under the act of May 14, 1889, a street railway company may diverge from its chartered route for a short distance to avoid grade-crossings, or for any other reason amounting to necessity or great public convenience. The occasion for such divergence and its extent are questions of location, and the decision of them primarily is within the discretion of the railway company. If the variance from the charter route is greater than is necessary, or the charter route itself is open to objection, the commonwealth alone can be heard to make it in the interest of. the general public.

*Railroads—Street railways—Equity—Act of June* 19, 1871.

The fact that a railroad company is injured by a diminution of its passenger traffic by the construction of a street railway company does not give the railroad company any right to equitable relief against the passenger railway company under the act of June 19, 1871, P. L. 1361. The act applies to direct interference with rights, not consequential injury to interests, and the inquiry under it is limited in suits by private parties to the question of the charter-right to do the act complained of.

*Railroads—Street railways—Overhead bridge.*

Where a street railway company lays its tracks upon a bridge belonging to a borough and crossing a railroad, the railroad company has a right to enjoin the street railway company from operating its line until the bridge is strengthened sufficiently to safely bear the weight of street cars.

Argued Feb. 7, 1896. Appeals, Nos. 17 and 18, Oct. T., 1896, by plaintiff, from decree of C. P. Westmoreland County, Nos. 288 and 296 in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for an injunction.

The facts appear by the opinion of the court below, McCONNELL, J., which was as follows:

The affidavits filed on the granting of the preliminary injunction in this case set forth, inter alia, as follows:

" That in the borough of Jeannette two branch tracks of the said Pennsylvania Railroad Company are constructed from a point west of the Seventh street overhead bridge in said borough in a southerly direction to various manufacturing industries, and that said branch tracks cross a driveway known as Clay avenue extension in said borough, the said Clay avenue extension never having been formally and legally opened as a street of said borough.

" That the said Greensburg & Hempfield Electric Street Railway Company and the Greensburg, Jeannette & Pittsburg Street Railway Company, defendants herein, are about to break said tracks with the intention of placing therein crossing frogs to be used by the said electric railway company in the movement of its cars to and fro across the said branch of the Pennsylvania Railroad Company at grade."

The contention of the complainant is, that the existence of the above recited facts demonstrates the illegality of the proposed act of the respondent, for it is said the respondent is only authorized, if it has any authority at all, to occupy the public streets, and that Clay avenue extension is not a public street.

If the facts recited exist, the law deducible from them is as contended for by complainant.

The testimony taken bears principally upon the question of whether the facts exist as above stated.

#### FINDING OF FACTS.

Without forestalling what a full hearing may ultimately show to be the facts of the case, it now fairly appears from the evidence before the court, that the main line of the Pennsylvania Railroad passes through the borough of Jeannette.  South of the main line of said railroad in the borough of Jeannette are located the factories, warehouses, stockhouses, etc., of the Chambers & McKee Glass Company.  From a point west of the Seventh street overhead bridge spanning the main line of the railroad, two sidings or branch tracks are constructed which extend to the factories, warehouses, stockhouses, etc., of the Chambers & McKee. Glass Company.  These sidings are from fifteen hundred to eighteen hundred feet in length, and are used by the railroad in shipping supplies to, and conveying their product from, the works aforesaid.

VOL. CLXXVI—36

These sidings intersect what is called Clay avenue extension —the driveway, as complainant designates it; the public street of the borough of Jeannette, as the respondents designate it.

On this Clay avenue extension the Greensburg, Jeannette & Pittsburg Street Railway Company has laid its track with the permission of the borough of Jeannette, and was about to break the track of the railroad company and to place therein such frogs and other devices as would enable it to cross at grade, when it was stopped by the service of the injunction in this case.

In 1887 or 1888 the land now occupied by the Chambers & McKee Glass Company's works, together with other land then constituting one tract with it, was bought by Capt. D. Z. Brickell, vice president of said company. He conveyed, before any work was done in the constructing of the works, to Hartupee, who in turn divided it into three parts, and conveyed to the Chambers & McKee Company the portion on which their works are located, and which also included the land now traversed by Clay avenue extension.

The construction of the factories commenced shortly after this, and the sidings were constructed about the same time, and were made use of during the process of construction of the works.

Prior to the erection of the works a township road (the borough of Jeannette was not then incorporated) traversed the ground now occupied by the buildings. This road was never vacated by any proceeding in court, but a part of the works was erected over it. This road ran parallel, or nearly so, with the Pennsylvania Railroad, and was the only one by which people from Penn and points west of Jeannette reached the latter point.

After the township road was closed up the public for a short time did not follow any well defined line of travel, but traversed the vacant lots then surrounding the works in whatever way they found to be most convenient.

The inconvenience resulting from the closing of the public road led certain citizens residing in the western end of the town of Jeannette to take concerted action for their relief. As a result of their negotiations with the Chambers & McKee Company, the said company agreed to dedicate to public use a thirty-foot

street to supply the place of the public road which had been closed up. In order that this proposed street might reach the point aimed at, it became necessary for the citizens to supplement the right thus given by the Chambers & McKee Company by purchasing a thirty-foot lot from one Peter Gordon. This was done, and the title thereto was afterwards made to the borough of Jeannette. The two acquisitions together constitute what is called "Clay Avenue Extension." Chambers & McKee graded the street. It crossed the switches of the Pennsylvania Railroad Company at grade. Crossing plank were put in and Clay avenue extension has been continuously used ever since as a public street. It, in fact, is the only thoroughfare through which public travel coming up the valley from Penn and points west of Jeannette reach the town last named.

The exact time when Clay avenue extension was opened up to public use does not distinctly appear. An ordinance was passed by the council of Jeannette and signed by the burgess on the 18th of July, 1890, purporting to make Clay avenue extension one of the public streets of the borough. It was opened up to public travel probably in the fall of that same year. The borough has maintained it at public expense continuously since its opening. The public user of it has been obvious and notorious and without the let or hindrance of any one. Both sidings of the complainant company were there and in use prior to the opening of Clay avenue extension, and, although not distinctly appearing from the evidence, it is nevertheless fairly inferable from the testimony of one of complainant's witnesses that the crossings were put in by the railroad company. It does not appear that there were ever any viewers appointed to assess damages; it does not appear whether any damages were ever claimed by the railroad company or whether it ever released damages for the crossing of its switches by Clay avenue extension. It does not appear whether or not the railroad company had any notice of the proposed adoption of the ordinance of July 18, 1890. The borough of Jeannette was incorporated on the 7th of June, 1889, pursuant to the provisions of the general borough act, and Clay avenue extension lies wholly within its limits.

At the time of locating the switches of the Pennsylvania railroad across the land now traversed by Clay avenue exten-

sion no written agreement was entered into with the Chambers & McKee Glass Company, the then owners of said land. In 1895 (September 23d), an agreement was entered into by the Chambers & McKee Glass Company of the first part, and The Pennsylvania Railroad Company of the second part, wherein the right of the railroad company to construct and maintain the western switch, and the extent of the user of it, is distinctly defined. By its terms it is provided that the railroad company has the privilege (revocable as stated below) of constructing, maintaining and operating said siding on the glass company's land on the location as shown on the blue print attached (on which attached blue print Clay avenue extension and its intersection with said siding are distinctly set out and marked), for the purpose of loading and unloading cars, and that said company will not use said siding for any other purpose and will not permit any other person or persons to use the same for any purpose whatsoever. This siding is to be kept in repair at the expense of the railroad company. The glass company has the right to terminate the right and privilege given to the railroad company at any time by giving it ninety days' notice of its intention so to do, and the railroad company is then forthwith to remove its property from the property of the glass company. The glass company claims that the railroad company is only entitled to a similar easement for the eastern siding, while the railroad company claims that by an oral agreement made at the time of its construction a conveyance in fee was to be given for it. That dispute is pending and undetermined by the parties to it.

No very serious dispute is now manifest about the existence of the foregoing facts, but counsel for the railroad company contend that they show that Clay avenue extension is *not* a public street of the borough of Jeannette, and that therefore the attempted occupation of it by the trolley company is illegal and without lawful warrant, while counsel for the latter company contend that they show that Clay avenue extension is a public street of said municipality, and that therefore it has the right to occupy said street, and to cross complainant's sidings laid therein, inasmuch as the act of assembly under which the trolley company is incorporated has provided that it shall have the right to use the street, with the consent of the local authorities, and

" to cross at grade, diagonally or transversely, any railroad operated by steam or otherwise."

## CONCLUSIONS OF LAW AND OPINION.

For the purposes of this case as it now presents itself we conclude that Clay avenue extension is a public street. The reasons and authorities which we think compel that conclusion of law, from the foregoing facts, are as follows : In order that a way may become a public street it must have been dedicated to public use. But this can as effectually be brought about by a common law dedication as by the procedure under our statutes. Both forms are valid and they may supplement each other. Dedications of lands to public uses are divisible according to the authorities into two classes : (1) Statutory dedications ; (2) common law dedications. Statutory dedications are made, and only can be made, in strict compliance with the statute, and this compliance will dispense with the necessity of any assent or acceptance on the part of the public. Such a dedication vests an estate in the public by conveyance or grant. In common law dedication there is no express grant to a grantee upon consideration, but it operates by way of an estoppel in pais of the owner rather than by a transfer of an interest in the land. But the application of the doctrine of estoppel in pais to the principle of dedication has been severely criticised. It does not follow, however, that an acceptance by the public will not cure an incomplete statutory dedication, or that rights acquired under it by third persons will be impaired. In such cases it may operate as a common law dedication : 5 Am. & Eng. Ency. of Law, pages 396 and 397.

\*    \*    \*    \*    \*    \*    \*    \*

It is plain that at the time of the attempted dedication of the land to the use of the public the Chambers & McKee Company was the owner in fee of the land now traversed by Clay avenue extension, including that portion now and then covered by the west siding of the railroad. It is also true that it then and now claims to be owner in fee of that portion covered by the east siding. If the right of the railroad company is dependent on its being the owner in fee of the portion covered by the east siding it must establish that fact at law, or at least by proof in this case. This has not been done, and we therefore

act on the assumption that at the time of the attempted dedication of the land by the Chambers & McKee Glass Company, that company was the owner in fee, and had the right to so dedicate it.  Assuming this right to be in the Chambers & McKee Company, and for the present assuming that the railroad might have a right to compensation where its track is crossed by a public highway, it by no means follows that there is no highway by virtue of that dedication and the subsequent user by the public, because it has not been shown in this collateral proceeding that compensation was actually paid to the railroad company.  If concurrence in the dedication made by a tenant, who had no right to make it, is to be presumed against the landlord (who alone had the right to dedicate), because " of the notorious and uninterrupted use of the way by the public," we certainly can assume the acquiescence of the railroad company in this case.  This street has been notoriously and uninterruptedly used by the public for five or six years.  Causeways, constituting part of the roadway, have been put in and maintained, across these sidings, presumably by the railroad company itself, and it has recognized the existence of the street in the very instrument which defines its own right to maintain the west siding.

There being adequate proof of dedication by the glass company, and of acquiescence by the railroad company in the opening and user of the street by the public, we are next to inquire whether it has been accepted by those who had the right to bind the public by an acceptance. . . .

The public moneys have been expended on this street ever since it was thrown open to the public, and it has been kept in repair by the borough of Jeannette.  This not only establishes an acceptance by the proper officials of the dedication to the public, but these expenditures having been made with the knowledge of the railroad company it would be inequitable, as against the public, for it to now be permitted to deny the existence of the highway.  " Parties who, possessing full knowledge of their rights, have lain by, and by their conduct have encouraged others to expend moneys or alter their condition in contravention of the rights for which they contend, cannot call upon the court for its summary interference."   Kerr on Injunctions, 16.

The expenditure in this case was made on the street by the

public and not by the street railway company, but the user to which it seeks to subject the street is not an additional servitude but simply the ordinary servitude which the public is entitled to make of a highway. It is presumably for such a mode of use, with others, that the public expenditure has been made. Therefore if the railroad is estopped, as against the public, to deny its use of Clay avenue extension as a highway, it is of necessity estopped as against the proposed use of it by the street railway company. But the principle might go further, for " the conduct and dealings of a man with others than the party with whom the contest exists may constitute a case of acquiescence, so as to preclude him from coming to the court for relief against a state of things to which his own conduct has led: " Kerr on Injunctions, 19.

In the case of Kelly v. Southern Minn. R. R. Co., 6 Am. & Eng. R. R. Cases, 264, the same doctrine is laid down. In the discussion of that case the court say: " Defendant also took exception to the ruling of the court admitting evidence tending to show that the locus in quo had been opened, worked and traveled continuously for ten years as a highway. . . .

For the purposes of this case we think that the facts found above sufficiently establish that Clay avenue extension is a public highway, without any reference to our statutes relating to dedication. The proof of common-law dedication by the owner of the fee, the recognition and user of the street by the public and this complainant and the control of it continuously for five or six years by the proper authorities of the borough of Jeannette, all contribute to the making of it a public street for all the practical purposes of this case.

The assumption of complainant's counsel, that the street can only be a public street by virtue of the provisions of the acts of 1851 and 1856, regulating the dedication by the law—of lands to public use in the boroughs of this commonwealth—is unwarranted.

Has there been a valid statutory dedication of Clay avenue extension to public use also? It is plain to make a valid statutory dedication the provisions of the statute should be closely followed. It is alleged that in this case this has not been done: (1) Because there has been no notice given to the railroad company of the proposition to adopt the ordinance of July 18,

1890, whereby Clay avenue extension was ordained a public street of the borough of Jeannette; and (2) because no viewers have been appointed by the court of quarter sessions to assess the damages.

Paragraph VIII. section 3, act of April 3, 1851, pl. 323, Purd. Dig. 247, makes it the duty of the corporate officers of the borough to give due and personal notice to all persons resident in the borough directly interested therein of any proposition to fix or change the roads, streets, lanes, alleys or courts, etc. It has not been shown that this notice was given to the Pennsylvania Railroad (assuming that it is a person resident in the borough) at the time of the adoption of the aforesaid ordinance; neither has it been proved that it was not given. Counsel for complainant contended that the proceeding is therefore fatally defective, and as to it totally void. To sustain this proposition they cite—(1) In re Palmer Twp., 11 W. N. 429, s. c., 102 Pa. 38. In this case there was a report of viewers of damages for a road. The report did not show that there had been notice of the view given. After it was confirmed, and before the entire road was opened, the railroad company presented its petition, alleging want of notice and praying that the decree be opened and petitioner be given a hearing. The lower court refused the petition and the Supreme Court reversed it. This proceeding was under the road law. (2) Opening of Taylor avenue, 146 Pa. 638. This was a proceeding under the general borough law. The record of the proceeding to assess damages and benefits for the opening of a borough street did not show personal notice to the property owners of the passage of the ordinance laying out the street, or of the view, or that said ordinance had been published. There were also other questions in the case. On exceptions filed before final confirmation, wherein, among other things, the want of notice was alleged, the court set aside and quashed the report. This was affirmed, without opinion, by the Supreme Court. (3) Streets and alleys in Parkesburg Boro., 124 Pa. 511. This was also a case upon a report of viewers—a rule to show cause why the report of viewers should not be approved. Among other things it was there held that under the provisions of section 27 of the act of 1851, and of section 8, article XVI. of the constitution, the streets, alleys, etc., so laid out and ordained may not be opened to public use

until just compensation is made to property owners, to be ascertained upon assessment under proceedings in the court of quarter sessions.

These cases all arose in the proceedings directly. They were all applications to the court in which the proceedings were pending. The questions there involved were not raised collaterally in the trial of another case in another court. Those cases are authority—or at least two of them are—in cases having like facts; but the facts of this case are not such as to subject it to the control of those cases. The first case is not a proceeding under the acts relating to boroughs at all. In the second case there was a proceeding to assess damages under the act of 1856, and the alleged deficiency was in what was shown or not shown in the petition for the appointment of viewers and in their report. Assume for the present that no viewers are needed in this case, is it essential to the validity of the ordinance that it show that notice was given before council passed and the burgess signed it? The case cited does not say so. What is the presumption of law, there being no proof on the matter? Is it not presumed that all things essential have been done until the contrary be made to appear? .. . . .

The borough council certainly had jurisdiction to pass the ordinance in question. It is presumed, therefore, that all things were done rightly. If it has not been so done that fact must be proved, or it is not in the case. It has not been proved. Even if the matter was such as could be corrected in the proceeding itself, it does not necessarily follow that it is here reviewable in a civil action inter partes. But the notice required by the provisions of the act of 1851 is directory only. This was decided both before and since the entry of the judgment in the Taylor avenue case, in 146 Pa. 638. This fully appears from the following cases: Section     , paragraph 8, of the act of April 3, 1851, pl. 323, making it the duty of borough officers to give due and personal notice to all persons resident in the borough directly interested therein of any proposition to fix or change the roads, streets, lanes, etc., or in the grading or regulation thereof, and to designate a time and place when they shall be heard in relation thereto, is merely directory, and the omission of such notice does not invalidate the proceedings: Com. v. Beaver Boro., 171 Pa. 542, 562; White v. McKeesport, 101 Pa. 400.

Therefore, if it was decided in 146 Pa. 638 (and this not entirely clear), that the notice described in the act of 1851 was essential to the validity of the ordinance, that decision has been overruled and the decision in White v. McKeesport is still the law.    Therefore, whether we consider the notice essential or only directory, the ordinance of July 18, 1890, making Clay avenue extension a public street, appears to be valid.

Is it essential to the existence of this street as a public highway that it be declared to be such by a valid ordinance, and in addition thereto that viewers be appointed to assess the damages?    If there are no damages to assess it would seem to be a vain thing for the court of quarter sessions to appoint viewers The very case that is cited to sustain the affirmative of the proposition says : " If the owner of private property on the line of the street, either for a consideration agreed upon, or without compensation, consent that the street be opened as laid out and ordained, the corporate authorities may at once proceed to open, and thereupon the street shall become a lawful public highway; otherwise, however, the corporation is obliged to resort to the courts for an assessment of damages according to law : " Parkesburg Boro., 124 Pa. 523.

The act of 1851 as expressly notices the right to open without an assessment as to open after an assessment where it says, " The same when duly opened according to law or by agreement of parties, are hereby declared public highways, over which the corporation shall exercise jurisdiction under the provisions of this act."    In either event they are public highways. Therefore the appointment of viewers is only essential where consent is lacking.    If the borough had attempted to open without the consent of a person entitled to damage, the court would, on application, restrain the opening, for it is provided that they shall not be opened for public use until the damages shall be liquidated.    The act, paragraph 3, section 27, also provides a hearing for any one aggrieved by the laying out and opening of a street. (See Purd. Dig. 253.)    Has there been any complaint made since the laying out or opening of this street five or six years ago ?    Has any injunction been asked for prior to the opening ?    We have already held that the opening was made with the acquiescence of the complainant, and that the knowledge of its open and notorious use and control by the municipal officers was possessed by it as well as by the public at large.

If complainant is entitled to any damages it can yet have them assessed, but after the street has been open for five or six years and the public moneys have been expended on it during that time the complainant cannot be allowed to say the street is no street because no jury was appointed to assess the damage.    Consent is conclusively presumed under the circumstances of this case; therefore there has been a good statutory dedication of Clay avenue extension to public use, as well as a good common law dedication of it.    It being a public street of the borough of Jeannette, the defendant company has the statutory right to occupy it and to cross the complainant's switches at grade.

This would make it proper to dissolve the temporary injunction in so far as the granting of it was based on the allegation that the locus in quo was not a public street.    But there is a matter of procedure which would be sufficient in itself to dispose of this interlocutory injunction in the same way.    We have treated the merits of this application as being before the court thus far.    At the granting of the injunction, on an ex parte application, the court assumed that the special equity set up in the affidavits read was also set up in the bill.    An inspection of the bill since discloses the fact that the bill on which the application was made was one on which a preliminary injunction had hitherto been granted by this court and after hearing (Hon. CALVIN REYBURN, P. J., of the thirty-third judicial district, specially presiding) was dissolved.    An appeal has been taken from that action by the court and is still pending in the Supreme Court.

It is claimed that successive writs cannot be issued on the same bill.    That question may be rather an abstract one as this case is now presented.    We are, however, of opinion that where the first injunction is not as comprehensive as the prayer of the bill, and the basis is laid for it in the bill itself, there is no legal objection to the application for and granting of another interlocutory injunction at a later stage in the progress of the case, if such an additional injunction is only supplementary to the one originally granted, and they together do not go beyond the basis laid in the bill and the prayer for relief.    Such practice, we think, could be fully sustained by the citation of cases if the necessities of this case required it.    Under our act of

assembly, proceedings in the cause are not stayed by the appeal now pending in the Supreme Court. But we will not rehear the precise case heard by Judge REYBURN and grant or withhold an injunction from such consideration. " A court will not, under ordinary circumstances, hear a motion for an injunction which has been refused by another court of co-ordinate jurisdiction." McNair v. Cleave, 9 Phila., 212. Neither should another judge in the same court continue an interlocutory injunction which, on an examination of the same equity, a judge has previously dissolved.

Upon the argument of a rule to show cause why an injunction should not issue in a case where an injunction had been granted in part, the question whether the existing injunction should not be removed cannot be considered.

Beach on Modern Equity Practice, section 774 ; Man Co. v. Van Keuren, 23 N. J. 251. Neither should we, under similar circumstances, practically reinstate an injunction already dissolved. If the previous action of this court was erroneous in the dissolving of that injunction it can be corrected in the Supreme Court, to which appeal has been taken. We therefore will not and have not here considered anything but the special grievance that peculiarly applies alone to the two crossings of the sidings of Jeannette.

But have these special matters been brought before the court in such a way as to warrant the consideration we have given them ? It is plain that an injunction of this kind can only be granted on a bill in equity praying for relief by reason of the specific equity therein set up. A court of equity will only decree on the case made by the pleadings, though the evidence may show the right to a further decree. A decree or judgment adjudicating a matter outside of the issue raised by the pleadings is an absolute nullity and open to collateral attack: Beach on Equity, 3790. . . .

We can nowhere find in the bill the special equity set up in the affidavits about which also the testimony was taken at the hearing.

If the locus in quo of the affidavits is specially referred to at all in the bill, it is where it is averred that the defendant company, ".in its projected route between intended termini, traverses roads which pass over lands belonging to this plaintiff, and

which, subject to the public easement to which the same were originally dedicated, is vested in this plaintiff at the following points in the said county of Westmoreland, to wit, at or near Jeannette station; at or near Burrell station," etc. The word "roads" as there used is obviously intended to embrace streets, for the points referred to are spoken of as being in boroughs as well as townships. If Clay avenue extension is referred to in this averment of the bill, it is in the bill alleged that the property of the complainant is "subject to the public easement," the very thing which the affidavits deny, and which is therein set up as the reason why the proposed occupation of the street by the defendant company would be illegal. We think an inspection of the bill will clearly show that the special grievance here complained of is not there set up. The case we have here is one that finds its basis alone in the affidavits. These are not a substitute for a bill. No injunction can stand without a bill for its basis. If complainant had desired to do so it could have amended or supplied the bill filed so as to bring into the case the special facts here pressed on the attention of the court. We have already considered those facts as if they had been brought into the case, but the preliminary injunction might well have been refused, because the grievance on account of which the injunction was asked was not set up in the bill. The grievance of the complainant in the bill as filed was considered by Judge REYBURN, and in the exercise of the discretion with which he was invested he dissolved a preliminary injunction. We will not reconsider the same matter on the same bill and make a different ruling. The final disposition of the case will be made on the equity set up in the bill, and that will not involve the consideration of the special state of facts now pressed on the consideration of the court: Pa. Sch. V. R. R. v. Phil. & Read. R. R., 160 Pa. pp. 292 and 293 ; Thompson's Appeal, 126 Pa. at pages 371 and 372.

The court entered the following decree :

And now, April 10, 1896, after hearing the evidence and the arguments of counsel in support of and against the continuing of the preliminary injunction granted by this court on the 4th of March, 1896, and upon a full consideration thereof, it is hereby ordered, adjudged and decreed that the same be now dissolved.

*Error assigned* was above decree.

*John G. Johnson,* with him *Cyrus E. Woods,* for appellant.—
An attempt by a corporation to exercise a franchise not pos-
sessed by it can be restrained at the instance of any person or
corporation injuriously affected thereby.    The commonwealth
is not a necessary party complainant: Penna. R. R. v. Mont-
gomery County Ry., 167 Pa. 73; Act of June 19, 1871, P. L.
1361; Homestead St. Ry. v. R. R., 166 Pa. 162; Potts v. Ele-
vated R. R., 161 Pa. 396.

If the construction and operation of the Jeannette railway,
and if the extension of the Hempfield railway, were illegal, the
appellant was entitled to an injunction because of the interference
with it in the enjoyment of the profits to which it was entitled
from the exercise of its franchise of transporting passengers
between the points connected by said railways: Germantown
Pass. Ry. v. Citizens' P. Ry., 151 Pa. 138.

If the construction and operation of the Jeannette railway
and of the extension of the Hempfield railway were illegal, the
appellant was entitled to an injunction because of the illegal
crossing by those companies of its rights of way by means of
said overhead bridges.    The appellant was entitled to an injunc-
tion against the construction and operation of the appellee's
railway on and over the overhead bridges at Greensburg and
Jeannette because of the unsafe and unfit condition of such
bridges.

The injunction in no event should have been dissolved or
refused until ample provision had been made for the securing
of safety in the operation by the appellees of the overhead bridges
at Jeannette and Greensburg.

There was no right in the Jeannette Company to construct or
operate a railway along the route designated by its charter.

There was no right in the Hempfield Company to construct
or to operate the extension of its road on or over the overhead
bridge at Greensburg.

*James S. Moorhead,* of *Moorhead & Head* and *W. F. Sadler,*
with them *Gregg & Potts,* for appellee.—The defendants had
a right to locate their railways over their chartered routes:
Penna. R. R. v. Montgomery Co. Ry. Co., 167 Pa. 62; Lehigh
Coal & Navigation Co. v. Inter-County St. Ry., 167 Pa. 75;

Tamaqua & Lansford Street Ry. v. Inter County St. Ry., 167 Pa. 91.

The act of 1871 contemplates nothing more than that it shall be made to appear from the charter that the corporation has the power to do the particular act in controversy, and which involves some right of the contestant: Western Pa. R. R. Co.'s App., 104 Pa. 399; Germantown Pass. Ry. v. Citizens' Ry., 151 Pa. 138.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896:

These cases depending upon substantially the same facts and the same principles of law and having been argued together, may be treated practically as one case for the purposes of this opinion.

The Pennsylvania Railroad Company, complainant and appellant, has failed to make out title to the bridge in question over its right of way. Though constructed and paid for by it the contract with the borough of Greensburg shows that it was so constructed as a part of the public highway, Pennsylvania avenue, and to be maintained as such by the borough. The only open point in the contract was the alternative to the borough that it should in consideration of such erection cause the grade crossing over the railroad at Harrison avenue to be vacated, or failing to do so, should pay the railroad the cost of the bridge. To which alternative the borough is liable does not concern this litigation. In either case the bridge became part of Pennsylvania avenue and the title is in the borough.

The next question is whether Clay avenue extension is a public highway, in such sense as to permit the defendants, in the absence of any right of eminent domain, to cross the sidings of appellant thereon. This is a question mainly of fact, and has been so fully examined by the learned judge below that nothing more need be said than that we see no reason to question the correctness of the conclusion reached by him.

There remain the two really important questions in the case, first, whether the defendant companies have any right to construct or operate railways along the routes or portions of routes in controversy, and secondly whether the appellant is in position to raise the question of such right.

It is strenuously contended on the part of appellant that the act of May 14, 1889, P. L. 211, under which the defendants were

chartered, gives no authority for the building of a passenger railway through boroughs, or over township or country roads, and especially through private property, but only upon streets, properly and strictly so called. Much reliance is placed upon Penna. R. R. Co. v. Montgomery Co. Ry. Co., 167 Pa. 62, to sustain this contention. But no such point was involved nor any such decision made in that case. On the contrary, while that proposition if sustained would at once and finally have disposed of the claims of the defendant passenger railway company to its asserted franchise, the decision was pointedly rested upon other grounds. The same may be said of the group of cases decided at the same time, Lehigh Nav. Co. v. Inter County Ry. Co., 167 Pa. 75; Rahn Township v. Ry. Co., 167 Pa. 84, and Tamaqua Street Ry. Co. v. Inter County Ry. Co., 167 Pa. 91; and of Homestead Street Ry. Co. v. Electric Ry. Co., 166 Pa. 162, and some other cases not necessary to refer to in detail. What Penna. R. R. Co. v. Montgomery Co. Ry. Co. really decides and is authority for is first that the laying of railway tracks on a suburban road is an additional servitude which cannot be imposed upon the owner of the fee against his will by the mere consent of the township authorities; and secondly that the franchise of a street railway passing through several localities is an entirety, and the necessary local or municipal consent for the whole route must be obtained, before it has a right to build any part. In the opinion in that case, and again in Rahn Township v. Ry. Co., supra, our Brother WILLIAMS reviewed the legislation on street passenger railways, and gave some timely warnings to investors and to the other departments of the government as to the dangers of the investment of capital in lines not within the express authorization of the act of 1889, and the necessity of further legislation on the subject, in view of the numerous and extended enterprises of the kind in operation or in progress. But the decisions were rested on the propositions above set forth. While no case has yet called for an exact definition of the words " street or highway " in the act of 1889, or of the limitations in that respect on railways incorporated under that act, it is manifest that the narrow interpretation contended for by appellant cannot be sustained.

It is not necessary to go further in this case, as upon the next question we are of opinion that the appellant is not in

position to dispute appellee's rights. The charter covers the route upon which the road is built, and the learned judge below has found that the appellee has the consent of the local authorities, of all the owners of property along the roads occupied and of those through whose property its line passes. To entitle appellant to question the prima facie right thus appearing it must show some interest in, or damage to itself, different from that of the general public. It has failed to do so. It is not the owner of the bridge, and the crossing over its right of way is upon a public highway, to all the rightful uses of which its property is subject. The bridge is part of the highway, and the consent of the borough authorities for the laying of the rails must be as effective on it as on any other part, or the borough would hold its municipal power to consent only in subordination to the will of every railroad which the highway happened to cross. The 18th section of the act of 1889 gives in express terms the right to cross railroads at grade, and a fortiori to cross overhead. In respect to a mere crossing, a railroad is not an abutting landholder to the passenger railway, as the plaintiff was in Penna. R. R. Co. v. Montgomery Co. Ry. Co., supra.

As to the objections to the appellee's route at other points, including the right to occupy township roads, and to buy or secure with the owner's consent a way through private property, the appellant's rights are no different in kind whatever they may be in degree from those of the general public. In regard to the latter objection, it is conceded, as was said in Rahn Township v. Ry. Co., 167 Pa. 84, 90, that passenger railways under the act of 1889 " may diverge for a short distance where the conformation of the surface or the positions of streams make it necessary in order to avoid discomfort or danger to the traveling public," and it may be added to avoid grade crossings, or for any other reason amounting to necessity, or what is the same thing in such matters, great public convenience. The occasion for such divergence and its extent are questions of location, and the decision of them primarily is within the discretion of the railway company. If the variance from the charter route is greater than is necessary, or the charter route itself is open to objection, the commonwealth alone can be heard to make it in the interest of the general public.

The act of June 19, 1871, P. L. 1361, affords appellant no standing. No rights of appellant are violated or infringed upon. It is not prevented or interfered with in doing any act that its charter permits. That its interests are affected by a diminution of its passenger traffic is a different thing. It has no monopoly of that traffic, which it holds only by force of superior facilities and convenience to the public, and like any other business, it must take the chances of rivalry and change of methods and customs of travel. The act of 1871 applies to direct interference with rights, not consequential injury to interests, and the inquiry under it is limited in suits by private parties to the question of the charter right to do the act complained of. West. Pa. R. R.'s Appeal, 104 Pa. 399. In Germantown Pass. Ry. Co. v. Citizens' Ry. Co., 151 Pa. 138, cited by appellant, the complainant had a track on Germantown avenue, and its claim to relief was based on the fact that another track on the same street would interfere with its operations.

The appellant did establish one point in which its rights were different from those of the public. The special danger to it and its passengers arising from the use of the bridge for a purpose for which it was not originally built gave appellant a standing to object to such use. It has a clear right to be protected from that danger. When this case was before some of the justices of this court at chambers on motion for special supersedeas, it was said in denying the motion, that the language of the decree below was not as precise as was desirable, and while it did not probably mean to leave the proper strengthening of the bridge to the uncontrolled discretion of the appellee, it was open to that construction. It was accordingly recommended to the court to amend it so as to leave no doubt that the court's approval should be obtained before cars were actually run. So far as appears this suggestion was not noticed or acted on in any way, and what was then recommended we must now direct.

Appeals dismissed, with costs, but the court below is directed to reinstate the injunction unless within sixty days it shall be made to appear, affirmatively, to the satisfaction of the court, that the bridge has been made safe for continued use by the cars of the respondents.