336 A.2d 883

PHILADELPHIA COMMUNITY CABLE COALITION ASSOCIATION by John F. O'Rourke, Trustee ad Litem, and John A. Zeh, Appellants, and Metrotel Communications, Inc.

v.

TELESYSTEMS CORPORATION et al.

Supreme Court of Pennsylvania.

Argued Nov. 11, 1974.

Decided March 18, 1975.

Rehearing Denied May 19, 1975.

472

Edward M. Kopanski, Braxton, Johnson & Kopanski, Philadelphia, for appellants.

John J. Runzer, Nancy J. Gellman, Pepper, Hamilton & Scheetz, Philadelphia, for appellees, Telesystems Corp. and Communications Properties, Inc.

Barry E. Ungar, Mann & Ungar, Philadelphia, for appellees, Phila. Cable Television Co. and Mid N. Y. Broadcasting Corp.

Gregory M. Harvey, Morgan, Lewis & Bockius, Philadelphia, for appellees, Bulletin Co. and North Phila. Cable Television Co.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from a decree of the Court of Common Pleas of Philadelphia which sustained preliminary objections and dismissed the complaint in equity filed by appellants, Philadelphia Community Cable Coalition Association (Coalition) and John A. Zeh (Zeh), a resident of Philadelphia,[1] against appellees.

This appeal deals with the granting of six cable television franchises in Philadelphia. In 1966 Philadelphia City Council divided the city into six different television cable areas with franchise rights being granted to six different cable television companies. The six ordinances all contained the following identical provisions (except for the names of the franchise holders):

"Section 3. Telesystems Corporation may enter into an agreement with any person now authorized to erect poles, overhead wires or cables and underground wires or cables for the purpose of sharing those facilities. The conditions set forth in Section 2 of this ordinance shall apply to the use of joint facilities insofar as those

---

1. Metrotel Communications, Inc., a co-plaintiff in the court below, has not appealed the dismissal of the complaint.

facilities are used by Telesystems Corporation for television transmission."

*   *   *   *   *   *   *   *

"Section 6. The authorization granted by this ordinance may be exercised only by Telesystems Corporation except that it may be assigned to an affiliate or subsidiary of Telesystems Corporation substantially owned by Telesystems Corporation, provided that the assignor and assignee undertake to be bound by the terms and conditions of this ordinance."

On December 14, 1973, appellee Telesystems Corporation (Telesystems) informed City Council that formal agreements had been entered into among itself, appellees Philadelphia Cable Television Co. (Philadelphia Cable) and Bulletin Company (Bulletin), by which Telesystems would operate the television cable network in the two franchise areas previously allocated to Philadelphia Cable and Bulletin. The agreements among the parties indicated that Telesystems was a twenty-one per cent owner of Bulletin, with an option to acquire the remaining seventy-nine per cent, and that Telesystems would in the future acquire one hundred per cent ownership of Philadelphia Cable.

On January 14, 1974, appellants Coalition and Zeh filed a complaint in equity against three franchise operators: Telesystems, Philadelphia Cable and Bulletin. This complaint sought to enjoin the proposed operation by Telesystems within the areas originally granted to Philadelphia Cable and Bulletin. The gravamen of the complaint is that the above agreement was in violation of the franchise granted by City Council and that such agreement would create a monopoly, to the detriment of Coalition and Zeh.

On January 21, 1974, a hearing was held on appellees' preliminary objections; the chancellor granted appellees' motion to dismiss for lack of standing on the part of appellants and this appeal followed.

■ Appellants argue that they do in fact have standing to contest the corporate actions of appellees. Appellants contend that the Act of June 19, 1871, P.L. 1360, § 1, 15 P.S. § 117, grants them standing. We agree. 15 P.S. § 117 provides:

"In all proceedings in courts of law or equity of this commonwealth, in which it is *alleged* that the private rights of individuals or the rights or franchises of other corporations are injured or invaded by any corporation claiming to have a right or franchise to do the act from which such injury results, it shall be the duty of the court in which such proceedings are had, to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such *alleged* injury to private rights, or to the rights and franchises of other corporations, results, and if such rights or franchises have not been conferred upon such corporation, such courts, if exercising equitable power, shall, by injunction, at suit of the private parties or other corporations, restrain such injurious acts; and if the proceedings be at law for damages, it shall be lawful therein to recover damages for such injury as in other cases." (Emphasis supplied.)

■ This statute grants standing to individuals, groups of individuals or other corporations which alleged that their private rights are injured or invaded by a corporate act in excess of a corporation's charter or franchise. Appellants alleged in their complaint that the take-over by Telesystems of the franchise areas of Philadelphia Cable and Bulletin would create a monopoly interest in one-half of the wards of the City of Philadelphia and thereby create a restraint of trade in the pricing and servicing of cable television which would injure them.

■ An examination of the case law surrounding the above-quoted statute indicates that an allegation of inju-

ry in a complaint is sufficient in law to grant standing to persons situated similarly to appellants. See *Gingrich v. Blue Ridge Memorial Gardens,* 444 Pa. 420, 282 A. 2d 315 (1971). See also *Edwards v. Pittsburg Junction Railroad Company,* 215 Pa. 597, 64 A. 798 (1906). Moreover, the granting of standing only recognizes that appellants have *alleged* sufficient facts to proceed to a hearing. Standing does not relieve appellants of the burden of proving injury or invasion of their private rights, because of appellee's alleged actions in excess of its franchise rights granted by the Philadelphia City Council.

· Decree vacated. Case remanded for proceedings consistent with this opinion. Each party to bear own costs.

ROBERTS, J., filed a dissenting opinion in which JONES, C. J., and POMEROY, J., join.

POMEROY, J., filed a dissenting opinion in which JONES, C. J., and ROBERTS, J., join.

ROBERTS, Justice (dissenting).

On the basis of a statute clearly inapplicable to this case, the majority concludes that appellants have standing to bring an action against the six corporations holding city-granted franchises to develop cable television in Philadelphia. Appellants having asserted no valid ground affording them standing to institute this action, I dissent.

The majority decides that section 1 of the Act of June 19, 1871, P.L. 1360, 15 P.S. § 117 (1967) [1] grants appel-

1. That section provides:
    "In all proceedings in courts of law or equity of this commonwealth, in which it is alleged that the private rights of individuals or the rights or franchises of other corporations are injured or invaded by any corporation claiming to have a right or franchise to do the act from which such injury results, it shall be the duty of the court in which such proceedings are had, to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act

lants standing. We interpreted that section in *Gingrich v. Blue Ridge Memorial Gardens,* 444 Pa. 420, 282 A.2d 315 (1971), where Mr. Chief Justice Jones wrote for a unanimous Court:

> "The 1871 Act does not usurp the power of the Commonwealth to inquire into *ultra vires* acts of a corporation or to forfeit a corporation charter; the statute simply grants an individual or corporate body the right in a court of equity to inquire whether or not a corporation is exceeding its charter powers, and, thereby, inflicting an injury upon such individual as distinguished from the public. Moreover, the individual or corporate body must demonstrate to the court of equity that the acts in excession of its charter power *directly* invade his rights as distinguished from consequential injuries."

Id. at 424, 282 A.2d at 317.

Clearly, under that decision, unless appellants allege that they have sustained injury in some capacity other than as members of the public, they have not established standing under the Act. Appellants concede in their brief that their alleged injury is in fact shared by the community at large. According to *Gingrich,* this admission is fatal to appellants' claim of standing under the Act of 1871.

The only other basis upon which appellants claim standing is section 1 of the Act of May 3, 1927, P.L. 515,

> from which such alleged injury to private rights, or to the rights and franchises of other corporations, results, and if such rights or franchises have not been conferred upon such corporation, such courts, if exercising equitable power, shall, by injunction, at suit of the private parties or other corporations, restrain such injurious acts; and if the proceedings be at law for damages, it shall be lawful therein to recover damages for such injury as in other cases."
> For the purpose of this dissent, I will assume that this section applies to limitations on corporate power contained in a franchise granted by a municipality as well as to those imposed by the corporate charter itself.

17 P.S. § 305, 1962.[2]   This section permits a citizen to bring an action to enjoin encroachments upon sidewalks in front of certain edifices.   On this record the claim is patently frivolous.

I would affirm the decision of the chancellor sustaining appellees' preliminary objections.

JONES, C. J., and POMEROY, J., join in this dissent.

POMEROY, Justice (dissenting).

The appellants in their complaint have not alleged how any rights or interests of theirs would be injured by appellees' proposed action.   I must therefore dissent from the Court's action today.

The Act of June 19, 1871, P.L. 1360, § 1, 15 P.S. § 117, cited by the majority, by its very terms requires that in order for parties to seek relief under that statute it must be "alleged that the private rights of individuals or the rights or franchises of other corporations are injured or invaded".   In the case of *Gingrich v. Blue Ridge Memorial Gardens*, 444 Pa. 420, 282 A.2d 315 (1971), we interpreted this requirement in the following manner:  "The statute simply grants an individual or corporate body the right in a court of equity to inquire whether or not a corporation is exceeding its charter powers, and, *thereby,*

---

2.   That section provides:
   "The courts of common pleas of the several counties of this Commonwealth, in addition to the powers and jurisdictions heretofore possessed and exercised, shall have the jurisdiction and powers of a court of chancery, so far as relates to the prevention, restraint, and abatement of encroachments on public sidewalks in front of residences, churches, hotels, apartment houses, or retail stores contrary to law and prejudicial to the interests of the community, upon the complaint of any municipality, or any citizen thereof, alleging injury thereby, without regard to whether or not such citizen has suffered damage or injury which is special to himself, where the said municipality has failed or refused to institute action for the prevention or restraint of such encroachments in front of residences, churches, hotels, apartment houses, or retail stores contrary to law, within thirty days after written notice thereof to such municipality by or on behalf of such citizen."

*inflicting an injury upon such individual as distinguished from the public."* (Emphasis added.) Id. at 424, 282 A.2d at 317.*

Appellant Philadelphia Community Cable Coalition avers in its complaint, as an injury, that "The citizens would suffer". The complaint makes clear the Coalition's conviction that the proposed acts of appellees would be detrimental to the community; it seeks an injunction to vindicate the community's interest. Its brief explains that the acts complained of "infringe upon the rights of the individual taxpayer and *the community at large as represented by [the Coalition]*". (Emphasis added.) Thus, in its view, the interests of the 40-member Coalition and those of the community are the same. The Coalition's president testified (at a hearing on the prayer for preliminary injunction) that the group had not sought, and did not intend to seek, a cable television franchise. Coalition has clearly not asserted any injury different from that which it believes the public at large will suffer. It thus has no standing under the Act of 1871.

Appellant Zeh is in no better position. As a resident of one of the wards covered by the franchise ordinances, he claims he will be damaged by appellee's proposed action in that he would be denied his right to have public hearings into the qualifications of the cable television company which is to operate in his area. Without passing on the merits of whether any such right exists, it is apparent that Zeh, like the Coalition, has failed to allege

---

* For similar statements of the requirements of the Act, see *Penna. R. R. Co. v. Greensburg, Jeannette & Pittsburg Street Railway Co.*, 176 Pa. 559, 578, 35 A. 122, 130 (1896) ("The act of 1871 applies to direct interference with rights, not consequential injury to interests . . ."); *Andel v. Duquesne Street Railway*, 219 Pa. 635, 639, 69 A. 278, 279 (1908) ("The private rights of individuals referred to in this act are rights of property of some character"). See also *Blankenburg v. Phila. Rapid Transit Co.*, 228 Pa. 338, 341, 77 A. 506 (1910); *Edwards v. Pittsburg Junction R. R. Co.*, 215 Pa. 597, 603, 64 A. 798 (1906).

that any right of his, distinct from that of the community at large, is about to be invaded or injured by appellees. He also, in my opinion, lacks standing to seek this injunction.·

Accordingly, I would affirm the decree of the lower court sustaining appellees' preliminary objections.

JONES, C. J., and ROBERTS, J., join in this dissent.