## North Penna. R. R. Co. et al., Appellants, v. The Inland Traction Company et al.

205    579
209    ²305
f  25 SC ²125
e  25 SC ²129
d  26 SC ⁴164

205    579
d 32 SC  591|

*Street railway companies—Township roads—Consent of abutting owners —Owners on opposite side of road.*

In the case of the occupation of a township road by the tracks of a street railway, an injunction, if applied for in time, will issue at the instance of an abutting owner, to protect his own land to the center line of the road

from the additional burden of the tracks upon it. It is none of his concern that his neighbors on the opposite side of the road consent to the use of their lands by the railway company, so long as, from such use, no injury results to him. The protection by injunction to which the landowner is entitled is confined to his own property.

*Street railways—Turnpike roads—Consent of abutting owners.*

Where a street railway company secures the consent of the township authorities to the use of a turnpike road, and also has the consent of the turnpike company and of the owners of property abutting on one side of the road, it may lay its tracks on such side of the road. An owner on the other side of the road who has not consented, but whose property has not been touched and who is in no way injured by the tracks has no standing to maintain a bill for an injunction to restrain the construction of the railway.

*Railroads—Ownership of land at road crossings—Abutting owners—Turnpike companies.*

Railroad companies, owners of the land on each side of a turnpike, where their tracks cross it, are not at that point abutting landowners, having a right to complain of a passenger railway company's imposition of an additional servitude upon their land; and where the tracks of a railroad company are crossed by an overhead bridge which is part of a public road, the railroad company has no standing to enjoin the construction of the passenger railway company, where it offers to so reconstruct and strengthen the bridge, that it shall be safe for the transportation and carriage of its cars, and this is so notwithstanding the fact that the railroad company owns the fee in the land covered by the bridge and that it built the bridge.

*Railroads—Street railway companies—Act of June 19, 1871, P. L. 1360.*

The Act of June 19, 1871, P. L. 1360, cannot be invoked by a railroad company in a proceeding by it to enjoin the construction of a street railway company along a public road which crosses its tracks and upon which land owned by it abuts, as none of the rights or franchises of the railroad company are injured or invaded.

Argued Feb. 2, 1903. Appeal, No. 271, Jan. T., 1902, by plaintiffs, from decree of C. P. Montgomery Co., June T., 1901, No. 7, on bill in equity in case of the North Pennsylvania Railroad Company and the Philadelphia and Reading Railway Company v. The Inland Traction Company, and the Philadelphia and Lehigh Valley Traction Company. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity to restrain the construction of a street railway.

The court below, WEAND, J., filled the following opinion :

The plaintiffs by this bill seek to restrain the defendants from building their street passenger railway in front of plaintiffs' lands, which abut on a turnpike road, and from crossing an overhead highway bridge where plaintiffs' road intersects said highway.

### FINDINGS OF FACT.

1. The North Pennsylvania Railroad Company is a duly chartered corporation, leased to and operated by the Philadelphia and Reading Railway Company.

2. The North Pennsylvania Railroad Company is the owner in fee of several tracts of land abutting on the east side of Chestnut Hill and Springhouse Turnpike Road south of the point where the railroad crosses said turnpike, and is also the owner of land where the railroad crosses said turnpike.

3. The turnpike was built and in operation many years before the construction of the North Pennsylvania Railroad.

4. The railroad as it crosses the turnpike runs through a deep cut, over which is erected a bridge built by the railroad company, and which is part of the turnpike, accommodating its travel.

5. The Philadelphia and Lehigh Valley Traction Company, into which the Inland Traction Company and the Lehigh Valley Traction Company were merged, has fixed and determined its route, beginning at Mountainville, Lehigh county, Pennsylvania, to the dividing line between the county of Montgomery and the county of Philadelphia at Chestnut Hill park. Part of its route is on the said turnpike.

6. Said defendant company has obtained consent of the townships and municipalities through which it has located its route, and also the consent of the Chestnut Hill and Springhouse Turnpike Company.

7. The defendant company does not propose to lay, construct, maintain or operate its road on that side of the turnpike road on which plaintiffs' property abuts, except where it crosses plaintiffs' right of way.

8. The owner of land in front of which defendants' road is proposed to be located have consented thereto, i. e., the abutting owners on the opposite side of the highway to plaintiffs'

property, have consented to the construction of the road as proposed by defendants.

9. Part of defendants' road as located is an extension from the borough of Lansdale to the terminus of the road at Chestnut Hill, a distance of about twelve miles, all of which extension is actually constructed, save about one and three quarters miles.

10. The construction of the road as proposed opposite plaintiffs' property will be wholly beyond the center line of the turnpike, and on no part of plaintiffs' land.

From the above findings of fact we conclude as a matter of law:

1. The defendants are lawfully engaged in the construction of their road.

2. That plaintiffs have no standing to object, as no part of their property is taken or encroached upon. Their ownership of the fee extends only to the middle of the turnpike, and defendants have the consent of the owners of the land on the opposite side, and also of the township authorities and of the turnpike company, which gives them the rights claimed.

3. That plaintiffs' bill must be dismissed with costs.

The only standing plaintiffs have to contest is by virtue of their ownership of land along the proposed route of defendants' company. Their rights, however, are not superior to those of the opposite owners, and, therefore, when a passenger railway is proposed to be built so as not to touch or encroach upon A's land, it is difficult to see why he should object when his opposite neighbor is willing to have it upon his land. Apart from his ownership, plaintiffs have no greater rights in the road than the rest of the community, and if they sustain no peculiar damage their right to object does not exist.

In Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62, the court said (and this is the keynote of all subsequent rulings upon subject): "It is not easy to see how such a company can protect itself in the use of country roads, except by contract with every owner of property along the roads they wish to occupy."

We adhere to that ruling, but decide that plaintiffs are not owners of property which defendants wish to occupy.

Electric passenger railways in the country have become a

public necessity. They have increased the value of property, built up villages and towns, afforded conveniences otherwise not obtainable, and are a benefit especially to those whose means do not admit of other methods of travel. The law should therefore be liberally construed in their favor without infringing upon the rights of others. Where captious, technical or other objections are made for reasons not based upon equitable or strictly legal principles, a court should not restrain what appears to be a great public improvement. What injury can be done to plaintiffs' property which is owned for railroad purposes, it is difficult to see, but these are matters to be decided hereafter.

We are fortified in our conclusions by the opinion of Judge YERKES in Phila. & Trenton R. R. Co. v. Phila. & Bristol Pass. Ry. Co., 6 Pa. Dist. Rep. 487, and Minnich v. Lancaster, Mechanicesburg & New Holland Ry. Co., 24 Pa. C. C. Rep. 312.

The bridge over the railroad is part of the public highway, no matter by whom erected or maintained, and if the defendants can occupy the turnpike, they can also occupy the bridge as part of the highway. They have expressed a willingness to reconstruct and strengthen it, and unless they do so before using it, application can be made for an injunction. The question may also arise as to whether the bridge should not be widened, but this is a matter to be determined when the plans are submitted for approval. So far as the crossing of plaintiffs' right of way is concerned, we refer to Penna. R. R. Co. v. Greensburg, etc., Street Ry. Co., 176 Pa. 559, where it was said, " In respect to a mere crossing, a railroad company is not an abutting landowner to a passenger railway."

And now, December 18, 1901, plaintiffs' bill is dismissed, with costs.

*Error assigned*, among other, was decree dismissing plaintiffs' bill.

*Charles Heebner*, with him *Montgomery Evans* and *James Boyd*, for appellants.—The defendants, attempting to construct an electric railway traversing country roads and connecting widely separated towns, with no corporate franchise so to do

other than the franchise conferred by the general street railway act of May 14, 1889, have not the right, without the consent of the plaintiffs as owners of property extending to the center line of a township road over which defendants' route is located, and in disregard of plaintiffs' objection thereto seasonably asserted, to construct their proposed railway on the township road in front of such property, although on the side of the center line opposite thereto; and a court of equity should restrain such construction by injunction upon the application therefor by the plaintiffs.

It cannot be successfully contended that any one of the defendant corporations can point to any charter right, power, or franchise to do any of the acts, the doing of which plaintiffs seek by the bill in this case to have enjoined. The defendants propose to construct and operate an electric railway traversing country roads and connecting widely separated towns. Whatever charter right or franchise they have to do this they obtain by virtue of the provisions of the general street railway act of May 14, 1889. And since the original decision of this court in Penna. R. R. Co. v. Montgomery County Passenger Railway Company, 167 Pa. 62, there has been no question that that act " does not contemplate or provide for the construction of long lines of transportation, connecting widely separated cities and towns by electric railways traversing country roads."

The corporations of Pennsylvania are creatures of the legislature of our commonwealth, and if the creator of these defendants has not endowed them—directly or conditionally—with the right or franchise to do any of the acts complained of by the plaintiffs, no amount of consents, of individuals or municipalities, can vest in them the corporate franchise to do those acts.

"Municipal consent cannot create or enlarge corporate franchises : " Hannum v. Media, etc., Elec. Railway Co., 200 Pa. 44.

In the exercise by our courts of equity of the powers vested in them by the legislature, a corporation's claim of a right of franchise from the commonwealth to do a particular act is always closely scrutinized, even though the act is apparently within the claim of right : Com. v. Pitts., etc., R. R. Co., 24 Pa. 159 ; Com. v. Erie & N. E. R. R. Co., 27 Pa. 339 ; Stewart &

Foltz's Appeal, 56 Pa. 413 ; Edgewood R. R. Co.'s Appeal, 79 Pa. 257 ; Mory v. Oley Valley Railway Co., 199 Pa. 152.

When corporations exceed their statutory powers in dealing with other people's property, no question of damages is raised where an injunction is applied for, but simply one on an invasion of right: Com. v. Pitts., etc., R. R. Co., 24 Pa. 159 ; Penna. R. R. Co.'s Appeal, 115 Pa. 514 ; Shamokin Boro. v. Shamokin & Mt. Carmel Elec. Ry. Co., 196 Pa. 166.

It is not at all incumbent upon plaintiffs to show that serious damages will be suffered by them, nor, as may have been the case prior to the act of 1871, that substantial or irreparable injury would ensue from the commission of the unwarranted acts, but simply that a purely private right will be thereby invaded: Faust v. Passenger Railway Co., 3 Phila. 164 ; City v. Friday & Crump, 6 Phila. 275 ; Cramp v. Neafie, 2 W. N. C. 300 ; Wirth v. Phila. City Pass. Ry. Co., 2 W. N. C. 650 ; Harrison v. St. Mark's Church, 3 W. N. C. 384 ; Bunnell's Appeal, 69 Pa. 59.

Damnum sine injuria is no defense to a proceeding under the act of 1871: Wier's Appeal, 74 Pa. 230 ; Pittsburg's Appeal, 79 Pa. 317 ; Evans v. Reading Chemical Fertilizing Co., 160 Pa. 209.

Apart from any special rights an owner of property abutting on a country highway may have in that highway—and especially in that particular part of it on both sides of the center line thereof in front of his property—he has, of course, a general interest therein in common with the public. The interest of the public—the community at large—in such a highway is that it shall be kept free and unobstructed for the passage thereover of lawful public travel; and the rights of the public therein are measured by their interests. But in the effects of an obstruction to the exercise of the public right of passage the special interest of the abutting owner, even as a member of the public, becomes manifest: Knowles v. Penna. R. R. Co., 175 Pa. 623. For it would be idle to claim that one owning and occupying a house at a point on a long country road would not be affected by an obstruction to public travel placed in the road in front of his property, though on the side of the center line of the road opposite thereto, differently and more injuriously than other members of the public not owning or occupying property

in the vicinity.    The diversion of travel to his side of the highway, the making that side carry a double portion of the burden of travel, the interference—even though only occasional—with access to his property, the obstruction to view caused by a high pile of lumber, the disagreeable sight of a huge bank of ashes, the noise from the running of electric cars, and the danger therefrom to him and the occupants of his house—all these segregate him from the rest of the community ; and these are effects that come from acts and things that are offenses primarily because they obstruct the public right of passage.    It is not at all of consequence how slight may be the differentiation ; for in seeking for standing room to invoke restraint of acts admittedly unwarranted by law, the mere fact of a special invasion of right or of an invasion of a special right is all-sufficient for the purpose : Penna. R. R. Co.'s Appeal, 115 Pa. 514 ; Sterling's Appeal, 111 Pa. 35 ; Penna. R. R. Co. v. Turtle Creek Valley Electric Ry. Co., 179 Pa. 584.

An owner of property abutting on a country highway has in that particular part of it in front of his property, on both sides of the center line of the highway, a special right, separate, different and distinct from that of the public therein.    And this special right comes, not from his ownership of the land to the center of the highway, but from his ownership of land abutting on the highway : Melon St. Case, 182 Pa. 397, 402–404.

It has frequently been decided in Pennsylvania that an abutting property owner has a special interest in the public road, so that any obstruction placed upon the road results in a special and distinct injury to him different from that to the general public : Faust v. Passenger Railway Company, 3 Phila. 164 ; Cramp v. Neafie, 2 W. N. C. 300 ; Thomas v. Inter-County St. Ry. Co., 167 Pa. 120 ; Penna. R. R. Co. v. Turtle Creek Valley Electric Ry. Co., 179 Pa. 584 ; Hopkins v. Catasauqua Mfg. Co., 180 Pa. 199 ; Hannum v. Media, etc., Elec. Railway Co., 200 Pa. 44 ; Knowles v. Penna. R. R. Co., supra.

*N. H. Larzelere*, with him *R. E. Wright*, for appellees.

OPINION BY MR. JUSTICE BROWN, May 4, 1903 :
Part of the route of the Philadelphia and Lehigh Valley Traction Company, the real appellee, is on the Chestnut Hill

and Springhouse Turnpike Road.   The North Pennsylvania
Railroad Company is the owner in fee of several pieces of land
abutting on the east side of the said turnpike road and owns
the land where its railroad crosses the turnpike, which was
built and in operation long before the construction of the rail-
road crossing it.   At the point of crossing the railroad runs
through a deep cut, over which there is a bridge, erected by
the railroad company as a part of the turnpike for the accommo-
dation of travel.   This bill was filed by the appellants, as owner
and lessee respectively of the land at the bridge crossing
and of the lots abutting on the turnpike, to enjoin the construc-
tion of the electric passenger railway on it.   The traction com-
pany did not propose to construct its road on the east side of the
turnpike, on which the lots of the North Pennsylvania Railroad
Company abut, but on the west side, beyond the middle of the
way, and had obtained the consent of the owners of the fee on
that side to do so.   Except where the railroad crosses the turn-
pike, its fee extends no further than to the center of the road.

Though the appellees are styled traction companies the
court below regarded them as street railway companies in de-
termining the questions before it, and, on this appeal, the ap-
pellants so treat them.   Their charters are not before us, but
it is conceded by counsel for appellants that whatever rights
and franchises they possess were conferred by the general street
railway act of May 14, 1889, P. L. 211.   It may be, as can
fairly be gathered from the ninth paragraph of the answer of
the defendants, that the rights and franchises which they are
exercising were originally conferred upon a street railway com-
pany or companies and passed to them as their successors.   Be
this as it may, we must, under the circumstances, regard the
appellees as possessing and undertaking to exercise the rights
and franchises of a street railway company.

By section 17 of the Act of May 14, 1889, it is provided
that "any passenger railway company incorporated under this
act shall have, and is hereby granted, power by its officers and
servants to ascertain and define such route as they may deem
expedient, over, upon and along any turnpike or turnpikes,
not however exceeding sufficient width for two tracks to be
laid down on, over and along such turnpike or turnpikes, and
thereupon, on, over and along such turnpike or turnpikes, to

lay down, construct and establish a track or tracks for its use in the transaction of its business, and thereupon to use the same in its general business: Provided, That before such passenger railway company shall enter upon and use any such turnpike or turnpikes in the laying of tracks and use of the same, it shall make compensation to the owner or owners thereof for such occupation and use of said turnpike or turnpikes, in the mode provided in section fourteen thereof." The right to occupy the turnpike having been given to the appellee the compensation to which the turnpike company was entitled was evidently amicably adjusted, for the finding of the learned court was that the turnpike company had consented to the construction of the passenger railway on its road. But, as it is settled by Pennsylvania R. R. Co. v. Montgomery Co. Pass. Ry. Co., 167 Pa. 62, and Penna. R. R. Co. v. Greensburg, etc., Street Ry. Co., 176 Pa. 559, that the laying of railway tracks on a country road is an additional servitude on the fee which cannot be imposed upon it against the will of the owner of the land, the appellants insist that the same rule should protect them as owners of land abutting on a turnpike, which is occupied by a street railway company with its tracks. Assuming this to be true, the answer is that the statute gives the appellee the right to occupy the turnpike, and, in occupying it, the property of the appellants has not been affected. There is no evidence of any obstruction to plaintiff's ingress and egress to and from their property, or of the slightest interference with their enjoyment of it. No additional servitude has been imposed upon their land, which extends only to the middle of the highway. The route of the appellee along the turnpike is over the lands of others, who have consented to its location there. In the case of the occupation of a township road, maintained by supervisors, the rule goes no further than that while an injunction, if applied for in time, will issue at the instance of an abutting owner, to protect his own land from an additional burden on it, it is none of his concern that his neighbors on the opposite side of the road consent to the use of their lands by a passenger railway company, so long, as, from such use, no injury results to him. The protection by injunction to which each landowner is entitled is confined to his own property.

Though the appellants are landowners on each side of the turnpike where their railway crosses it, they are not at that point abutting landowners, having a right to complain of the appellee's imposition of an additional servitude upon their land.  The crossing of the turnpike by their tracks made the bridging of a deep cut necessary, and the bridge became a part of the highway, but the railroad company is not, at that crossing, "an abutting landowner to the passenger railway, as the plaintiff was in Penna. R. R. Co. v. Montgomery Co. Pass. Ry. Co., supra;" Penna. R. R. Co. v. Greensburg, etc., Street Ry. Co., 176 Pa. 559.  In view of the expressed readiness and willingness of the appellee "to so reconstruct and strengthen the said bridge, as that it shall be amply safe for the transportation and carriage of the traffic of the respondent and its cars over and across the same," the only objection that the appellants could make to the use of the turnpike at that point disappears.

Under his findings of fact, the learned judge below properly concluded that the defendants were "lawfully engaged in the construction of their road."   Even if they were not, the Act of June 19, 1871, P. L. 1360, is not intended for such a case as the appellants present, and cannot be invoked by them, for none of their rights or franchises are injured or invaded.   The decree can well be affirmed upon the learned court's second conclusion of law : " Plaintiffs have no standing to object, as no part of their property is taken or encroached upon.   Their ownership of the fee extends only to the middle of the turnpike, and defendants have the consent of the owners of the land on the opposite side, and also the township authorities, and of the turnpike company, which gives them the rights claimed."

Appeal dismissed and decree affirmed at appellants' costs.