CITY OF PHILADELPHIA, Appellee,

v.

CONSOLIDATED RAIL
CORPORATION,
Appellant.

National Railroad Passenger
Corporation, Appellant.

Nos. 97–7221 to 97–7223.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 11, 1999.

Decided July 7, 2000.

Dennis M. Moore argued the cause for appellant National Railroad Passenger Corporation. With him on the briefs were J. Brian Molloy and John L. Moore, Jr.

Joann Hyle argued the cause for appellant Consolidated Rail Corporation. With her on the briefs were Laurence Z. Shiekman and Stacey A. Mufson. Stephanie L. Kralik entered an appearance.

Kenneth A. Murphy argued the cause for appellee City of Philadelphia. With him on the brief was Gaetan J. Alfano.

Susan D. Colwell argued the cause and filed the brief for appellee Pennsylvania Public Utility Commission. John F. Povilaitis entered an appearance.

Before: SILBERMAN, SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Consolidated Rail Corporation and National Railroad Passenger Corporation appeal from a summary judgment entered against them in favor of the City of Philadelphia and the Pennsylvania Public Utility Commission requiring the railroads to pay for the refurbishment of a highway bridge. Because the question of ownership of the bridge was a matter governed by the state law of Pennsylvania, we certified that question to the Supreme Court of Pennsylvania. That court having now ruled that the City of Philadelphia owns the bridge, we reverse the judgment of the District Court and remand the case for the entry of summary judgment in favor of the railroads.

## Analysis

This case originated in the District Court for the District of Columbia sitting as a Special Court under the Regional Rail

Reorganization Act of 1973, 45 U.S.C. § 719 (1994). The case is a contest between the City of Philadelphia ("the City") and the Pennsylvania Public Utility Commission ("PUC") on one side, and Consolidated Rail Corporation ("Conrail") and National Railroad Passenger Corporation ("Amtrak") on the other, over who owns a highway bridge over a below-grade railroad right-of-way, who has to pay for its repair and upkeep, and in what amount. The railroads appeal the District Court's grant of summary judgment against Conrail and Amtrak and in favor of the City and the PUC, in which the railroads were required to pay for the refurbishment of a highway bridge as its owners and as successors to the now defunct Pennsylvania Railroad and its successor, the also defunct Penn Central Transportation Company ("Penn Central") under a contract with the City in which the railroad promised to maintain the bridge at no cost to the City. The dispositive issue in the case is the ownership of the bridge under Pennsylvania law. If the Pennsylvania Railroad, the original builder, never owned the bridge, but merely was a party with a contractual maintenance obligation, then the bridge did not pass to the railroads when the properties of Pennsylvania Railroad's successor Penn Central passed to Conrail and Amtrak under the provisions of the Regional Rail Reorganization Act of 1973. The parties offer Pennsylvania authority both for the proposition that highway bridges are parts of the highway they carry, and that they are appurtenances to the property they cross. No one provides, nor have we located, any case from Pennsylvania directly considering what effect the ordinance between the City and the railroad and the allocation of maintenance obligations in perpetuity may have on the question of ownership in the first instance.

## A. *Jurisdiction*

This action was originally filed in the Special Court under 45 U.S.C. § 719(e) (1994). The Special Court was abolished by Congress effective January 17, 1997, and its original jurisdiction was transferred to the United States District Court for the District of Columbia. *See* 45 U.S.C. § 719(b)(2) (Supp. III 1997). We have jurisdiction of this appeal under 45 U.S.C. § 719(e) (Supp. III 1997) and 28 U.S.C. §§ 1291 and 1294 (1994).

## B. *Material Facts of the Case*

The basic facts material to this issue are not disputed. The bridge in question crosses six railway tracks in the railroad right of way at 41st Street in Philadelphia. The City owns the bridges over 40th Street and 42nd Street, but maintains that the railroads own the 41st Street bridge. The 41st Street bridge crosses six railway tracks, four owned by Amtrak and two owned by Conrail. The original steel and timber bridge elevating 41st Street where it intersects with the railroad right of way was built at the site in 1875. That bridge was replaced by the now-deteriorating steel and concrete structure which was built in 1929, pursuant to a Philadelphia city ordinance that required the Pennsylvania Railroad to build and maintain the bridge at its own cost under the supervision of the Philadelphia Department of Public Works. The Pennsylvania Railroad[1] signed a document accepting these requirements on May 11, 1927. The Pennsylvania Public Service Commission (which became the PUC) issued a Certificate of Public Convenience for construction of the highway bridge on February 21, 1928, and Penn Central completed construction in August of 1929. None of these documents mentions ownership of the bridge.

It appears that the Pennsylvania Railroad and its successor Penn Central lived up to this contractual obligation until financial crisis struck the rail industry in the northeast, threatening its extinction. By 1971, Penn Central had filed for bankrupt-

---

1. The Pennsylvania Railroad, through merger, became the Penn Central Transportation Company.

cy. It was not alone. By the early 1970s, the railroads in the northeast were failing at such a rapid rate that Congress stepped in to resolve the regional rail crisis. Congress passed the Regional Rail Reorganization Act of 1973, Pub. L. No. 93–236, 87 Stat. 985 (1974) (codified as amended at 45 U.S.C. § 701 *et seq.* (1994)) (the "Rail Act"), which allowed the railroads to reorganize into a single entity, and Conrail was designed to salvage the viable rail properties, leaving much of the debt behind in bankruptcy and beginning with a "clean slate." The process by which new, financially viable railroads were built from the wreckage that was the northeastern rail system forms the essential legal background to this case. *See generally Regional Rail Reorganization Act Cases,* 419 U.S. 102, 108–17, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).

The Rail Act created the United States Railway Association, *see* 45 U.S.C. § 711(a), a non-profit corporation, which in turn prepared a Final System Plan ("FSP") which designated how rail properties held by the bankrupt railroads would be distributed, *see* 45 U.S.C. § 716. The Rail Act also created Conrail, *see* 45 U.S.C. § 741(a), and mandated that rail properties designated in the FSP be conveyed to Conrail, *see* 45 U.S.C. § 743(b). The conveyance process was supervised by the Special Court and implemented through a Conveyance Order of the Special Court. *See* 45 U.S.C. § 719(b). Properties related to passenger rail service were then reconveyed to Amtrak. The transfer that matters in this case occurred when, pursuant to the Rail Act, all of Penn Central's "rail properties," i.e. properties "used or useful in rail transportation service," 45 U.S.C. § 702(14), were conveyed to Conrail, and the property related to passenger rail service was reconveyed to Amtrak. The City and the PUC claim that Penn Central's trustees in bankruptcy conveyed all of the real property in Philadelphia County to Conrail, "including the railroad right of way, rails, and the 41st Street Bridge formerly owned by [the Pennsylvania Railroad]."

The railroads dispute that the bridge was ever owned by Penn Central, and thus dispute that it could ever have been properly conveyed to them. They characterize the Rail Act conveyances differently. According to the railroads, the deeds between the trustees of the Penn Central bankruptcy estate and Conrail, and between Conrail and Amtrak, conveyed the real property free and clear of liens and encumbrances. The six railroad tracks under the 41st Street bridge were conveyed to Conrail, and four of them were reconveyed to Amtrak. Real property was conveyed by deed, and other property was conveyed by Bills of Sale and Assignment, which specifically excluded contracts for the "rehabilitation and modernization" of property without complete financial remuneration of the new railroads. Contracts for the "maintenance and security" of property not passed to Conrail also were expressly not conveyed.

The railroads denied any ownership interest in the bridge, and opposed attempts by the City to have them maintain the bridge. The bridge continued to deteriorate to the point that it was closed to vehicular traffic in 1993, and only pedestrians were allowed across. The City notified the PUC of the deteriorated condition of the bridge, and the PUC approved the closure. (To the extent not preempted by federal law, the PUC has regulatory authority over bridges crossing railroad rights of way under Pennsylvania law, and may permit changes or construction, and determine who must pay for maintenance.) The PUC began an investigation to determine who was responsible for the repair and future maintenance of the bridge. The PUC directed Amtrak to create a plan for repairing the bridge, and ordered the City to pay the initial costs of repair.

The current case was initiated by the City in the Special Court asking for a declaration that the responsibility to maintain the 41st Street bridge had been conveyed to Amtrak and Conrail by the Special Court's order transferring Penn

Central's property. Conrail then brought a related action against the PUC, seeking to bind it to any order issued by the Special Court. The two cases were consolidated. On simultaneous motions for summary judgment, the Special Court held that the real property under the 41st Street bridge and the bridge itself had been owned by Penn Central and had been conveyed to Conrail and Amtrak, and that the contractual obligation to maintain the bridge under the 1927 agreement had also been conveyed. The Special Court further held that while Conrail and Amtrak were not responsible for any deterioration that took place prior to April 1, 1976 under the Rail Act's "fresh start policy," the deterioration had substantially occurred after that date. It held Conrail and Amtrak responsible for all of the costs associated with repair and maintenance of the bridge, and apportioned two-thirds to Amtrak and one-third to Conrail, according to the number of rail lines each owned. The Court also stated that Amtrak's obligation was not a tax or fee, but a contractual obligation. It did not address Amtrak's defenses that the action under the contract was barred by the statute of limitations or discharged in the Penn Central bankruptcy proceeding.

### C. The Certification

Because this case presented a question that will likely rise again in the context of litigation over the so-called "orphan bridges" to which neither the railroads nor the municipalities claim title, and because state law governing ownership of the bridge is dispositive of the question of contractual allocation of maintenance agreements, we concluded that an authoritative response to the question would assist in establishing uniformity in future proceedings. We further concluded that the precise effect of the ordinance contracts on questions of bridge ownership is purely a question of state law. We there-

fore petitioned the Supreme Court of Pennsylvania for certification of the question of state law under 204 PA.CODE § 29.451 (1999). The Pennsylvania Supreme Court helpfully granted our petition, and has now decided the certified question.

Based on the undisputed facts, that court held that it "has long been recognized as the law in Pennsylvania" that "where a railroad company has constructed at its own expense a bridge over its tracks at a street crossing, and the bridge is to constitute part of a public highway and be maintained by the municipality, title to the bridge rests in the municipality." *City of Philadelphia v. Consolidated Rail Corp.*, 560 Pa. 587, 747 A.2d 352, 354 (2000) (citing *Pennsylvania R.R. Co. v. Greensburg, J. & P. Street Ry. Co.*, 176 Pa. 559, 575, 35 A. 122, 129 (1896)). As further authority, the Supreme Court cited *North Pennsylvania Railroad Co. v. Inland Traction Co.*, 205 Pa. 579, 587–89, 55 A. 774, 775–76 (1903), which held that a "railroad lacked standing to object to proposed use by streetcars of a highway bridge that it constructed over its right-of-way, inasmuch as the bridge became part of the public highway, and the railroad thus had no property interest that would be affected." *Consolidated Rail*, 747 A.2d at 354. The court further recognized as a long established principle "that a bridge carrying a public street is deemed to be a part of the street, and, as such, it is owned by the entity that owns the street." *Id.* (citing *Heinlein v. Allegheny County*, 374 Pa. 496, 499, 98 A.2d 36, 38 (1953)). As it is "undisputed that the City owns the public street that is supported by the 41st Street bridge," it has owned the bridge since the completion of its reconstruction in 1929.[2]

### Conclusion

The Pennsylvania Supreme Court having decided the governing question of state

2. On June 19, 2000, the Supreme Court of Pennsylvania issued an order denying the

City's application for reconsideration.

law that the City and not the railroads owns the bridge, and the railroads having been absolved of contractual liability by the bankruptcies and the Reorganization Act, we reverse the decision of the District Court granting summary judgment in favor of the City and the PUC and remand the case for the entry of summary judgment in favor of the railroads.